UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-301-KKC

TRAVELERS CASUALTY INSURANCE COMPANY
OF AMERICA *on behalf of Johnny Palumbo, II,*
*doing business as Brookview Apartments*,                           PLAINTIFF

v.             **MEMORANDUM OPINION AND ORDER**

VOLUNTEERS OF AMERICA KENTUCKY, INC.
and DENA SELLERS,                                                   DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

This matter is before the Court on Plaintiff's motion to exclude the testimony of Defendant's[1] fire expert Robert Russell [DE 57] and Defendant's motion to exclude the testimony of Plaintiff's liability experts, Captain Gary Ward, James Thomas, and Frederick Franklin. [DE 66]. After extensive briefing, testimony, and oral argument, both motions are **DENIED**.

    I.    BACKGROUND

Plaintiff, Travelers Casualty Insurance Company of America ("Travelers") brought a subrogation action against Defendants. The subrogation action arises out of a fire at the Brookview Apartments in Lexington, Kentucky. Defendant, Volunteers of America ("VOA"), assisted Dena Sellers in obtaining an apartment at Brookview and assumed liability for any damage she may cause. Travelers insured the apartment building and claims that Dena Sellers caused the fire by carelessly discarding cigarettes into a plastic trashcan next to her bed. VOA contends that the fire originated on the patio and was caused by an unknown energized electrical

---

[1] Although this case has two defendants, only Volunteers of America, Inc. participated in this matter and this Opinion will proceed as if there is one defendant.

device. Plaintiff and Defendant each move to exclude the other's experts for remarkably similar reasons.

## II.     ANALYSIS

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., the Supreme Court "established guidelines for district courts to use in determining the admissibility of expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence." *Pride v. BIC Corp*., 218 F.3d 566, 577 (6th Cir. 2000). *Daubert* applies to "scientific," "technical" and "otherwise specialized" knowledge. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999). "Although . . . the evaluation of expert testimony is generally left to juries, the Court emphasized the trial judge's 'gatekeeping' role with respect to expert proof . . . ." *Pride*, 218 F.3d at 577 (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597-98 (1993)). The Federal Rules of Evidence provide that an expert who is qualified:

> by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A proposed expert witness "must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride,* 218 F.3d at 577 (quoting Fed. R. Evid. 702). Next, the testimony must assist the trier of fact and "must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test being offered and the disputed factual issues in the case." *Id*. (citing *Daubert*, 509 U.S. at 592).

The district court's function as a gatekeeper is "to determine whether the principles and methodology underlying the testimony itself are valid," *United States v. Bonds*, 12 F.3d 540, 556 (6th Cir.1993), "not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Pride*, 218 F.3d at 577; *see also Daubert*, 509 U.S. at 595, (emphasizing that the focus of the inquiry "must be solely on principles and methodology, not on the conclusions that they generate.").

A Rule 702 inquiry is "a flexible one." *Daubert*, 509 U.S. at 594; *see also Kumho Tire Co.*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are still available to the opposing party to attack "shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "[M]ere weakness in the factual basis of an expert witness' opinion bear[s] on the weight of the evidence rather than its admissibility." *McClean v. Ontario, LTD.*, 224 F.3d 797, 801 (6th Cir. 2000). The party proffering the expert testimony must demonstrate by a preponderance of proof that the potential expert witness meets requirements discussed above. *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 at 592 n. 10).

In this case, all agree that each witness's testimony would assist the trier of fact and that NFPA 921 is the appropriate "reliable principles and methods." Each witness asserts that he followed NFPA 921. Therefore, the primary dispute with each witness is whether their "testimony is based on sufficient facts or data" and whether they "reliably applied [NFPA 921] to the facts of the case." Fed. R. Civ. P. 702.

NFPA 921 "is designed to assist individuals who are charged with the responsibility of investigating and analyzing fire and explosion incidents and rendering opinions as to the origin,

3

cause, responsibility, or prevention of such incidents." [NFPA 921, ch. 1.1 (2008 ed.)]. The purpose of NFPA 921 "is to establish guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents." [*Id*. ch. 1.2.1] "Courts have recognized NFPA 921 as a 'guide for assessing the reliability of expert testimony in fire investigations.'" *Thompson v. State Farm Fire and Cas. Co.*, 548 F. Supp. 2d 588, 592 (W.D. Tenn. 2008) (quoting *Indiana Ins. Co. v. Gen. Elec. Co*., 326 F. Supp. 2d 844, 849 (N.D. Ohio 2004)); *see also Travelers Indem. Co. v. Ind. Paper & Packaging Corp*., No. 3:02-cv-491, 2006 WL 1788967, at *4 (E.D. Tenn. June 27, 2006) (recognizing "that NFPA 921 is a peer reviewed and generally accepted standard in the fire investigation community").

The purpose of NFPA 921 "is to establish guidelines and recommendations." [NFPA 921, ch. 1.2 (2008 ed.)]. "Deviations from these procedures, however, are not necessarily wrong or inferior but need to be justified." [*Id*. ch. 1.3]. NFPA 921 states that "[a]s every fire . . . is in some way unique and different from any other, this document is not designed to encompass all the necessary components of a complete investigation or analysis of any one case. The scientific method, however, should be applied in every case." [*Id.* ch 1.3.2]. In addition, "[n]ot every portion of this document may be applicable to every fire . . . .  It is up to investigators . . . to apply the appropriate recommended procedures in this guide to a particular incident." [*Id.* ch. 1.3.3].  Finally, "it is recognized that time and resource limitations or existing policies may limit the degree to which the recommendations in this document will be applied." [*Id.* ch. 1.3.4].

Moreover, NFPA 921 defines "guide" as "[a] document that is advisory or informative in nature and that contains only nonmandatory provisions." [*Id*. ch. 3.2.3]. Although following NFPA 921 indicates the reliability of an investigator's methods, a departure from the document's

4

guidelines is not necessarily in and of itself grounds for automatic disqualification. *Thompson*, 548 F. Supp. 2d at 592.

NFPA 921 recommends that fire investigators follow the scientific method in six steps: (1) identify the problem, (2) define the problem, (3) collect data, (4) analyze the data, (5) develop a hypothesis using inductive reasoning, and (6) test the hypothesis using deductive reasoning. [NFPA 921 ch. 4.3.1-6]. If the hypothesis cannot be supported after testing, the expert is to repeat steps (3)-(6) and develop a new hypothesis. The testing process should continue until all feasible hypotheses have been tested against the data and one hypothesis is consistent with the facts. [*Id.* ch. 4.3.6]. "If no hypothesis can withstand an examination by deductive reasoning, the issue should be considered undetermined." [*Id.*]

The inability to physically test a hypothesis does not render expert testimony inadmissible if the expert tested his or her hypothesis "by systematically eliminating the other possible ignition sources he located in and around the area of origin in accordance with NFPA 921 § 18.2.1." *Kentucky Farm Bureau Mut. Ins. Co. v. Hitachi Home Elec.*, Civ. No. 3:08-30, 2009 WL 2589854, at *4 (E.D. Ky. Aug. 20, 2009). Additionally, complaints about "allegedly unaccounted for factors go[] to the weight of the testimony, not its admissibility." *Potts v. Martin & Bayley, Inc.*, Civ. No. 4:08-CV-15, 2011 WL 4703058, at *4 (W.D. Ky. Oct. 4, 2011). An investigation that "only" reviews the police accident report and some depositions, statements and photographs can still be admissible if the principles and methodology are themselves valid. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 669 (6th Cir. 2000).

All four experts are qualified to offer opinions about the fire's origin and cause because they followed the generally accepted methodology. The parties and experts dispute each other's conclusions, but the Court's gatekeeping role is limited to examining the principles and

methodology underlying the conclusion, not the conclusion itself. All experts followed the same principles and methodology. They just disagree about the relevance and veracity of disputed facts and how much weight to give the various disputed facts. The jury will ultimately resolve those factual disputes.

A. **Defense Expert – Robert Russell**

Robert Russell has two opinions. First, Russell believes that the area of origin for the fire is not the plastic trashcan next to Sellers's bed. Second, Russell opines that the point of origin of the fire is on the patio between the bedroom door and living room door and the fire was possibly caused by the outside wall receptacle or an unknown electrical device. Travelers, smartly, does not contest Mr. Russell's qualifications as an expert. Travelers objects to the facts and data supporting Russell's opinions and his methodology in arriving at each opinion.

1. Facts and Data

Russell's conclusion that the area of origin of the fire was not next to Sellers's bed is based on sufficient facts and data. Russell participated in the inspection and deconstruction of the section of carpet removed from Sellers's bedroom that contained the melted plastic trashcan. He observed that some of the trashcan's contents were not completely destroyed in the fire. For example, Russell noted that the plastic trash bag was still pliable and not consumed, the label on an ibuprofen bottle was not charred and the label on a cigarette wrapper was still readable. Russell believes that if the fire started in the trash can, these items would have been completely consumed. Additionally, Russell relied on the fact that Sellers did not suffer any injuries and statements that Sellers gave to Plaintiff's experts that she saw the fire above the patio door when she woke up. Russell believes that if the fire started in the trashcan next to Sellers's bed and she

did not wake up until the fire was already above the patio door, she would have suffered serious injuries.

In concluding that the fire started on the patio between the bedroom door and the living room door, Russell relied on photographs of the scene taken by Plaintiff's experts. Russell testified to the clear "V" pattern originating at the base of the wall on the patio between the two doors. Russell also relied on pictures of the patio that, according to him, show a plug in an outside wall receptacle and a loose wire or extension cord on the patio. Russell believes that an unknown electrical device, possibly the wire plugged into the outside receptacle, caused the fire. Russell could not identify this electrical device because, according to him, Plaintiff's experts did not properly preserve and document the scene. Russell did not interview any witnesses or perform a first person inspection of the site because he was not retained until two years after the fire.

Travelers objects to the factual basis for Russell's opinion because his opinion is allegedly contradicted by witness statements. Travelers takes particular issue with the fact that Russell allegedly does not adequately explain Lieutenant Hayden's testimony that he observed the fire exiting the apartment onto the patio when he first arrived on the scene. Travelers also argues that Russell did not test his theory and he cannot identify the alleged defective device. Travelers' objections to the factual basis for Russell's opinion could be excellent material for cross-examination, but are insufficient to exclude his testimony under *Daubert*. Although there may be facts that contradict or weaken Russell's opinions, the opinions are based on sufficient facts and data, which is all that Fed. R. Evid. 702 requires.

2. Methodology

Russell's expert testimony is admissible because he used the scientific method and deductive reasoning process required by NFPA 921. Travelers argues that Russell did not follow the methodology suggested by NFPA 921 because he did not properly test his opinion against all of the evidence. Travelers' objections bear on the weight of Russell's opinions, not on their admissibility.

Russell followed the scientific method outlined by NFPA 921. He collected data, analyzed the data, developed a hypothesis, tested the hypothesis using deductive reasoning and rendered a final opinion. Travelers' argument that Russell did not account for certain pieces of evidence, mainly testimony from various eyewitnesses, "goes to the weight of the testimony, not its admissibility." *Potts*, 2011 WL 4703058, at *4. Russell discounts much of the eyewitness testimony for various reasons. It is up to the jury to evaluate his reasons for discounting such testimony. Travelers posits this factual argument as a procedural one by arguing that, according to NFPA 921 chapter 4.3.6, Russell must go back and evaluate his hypothesis against the facts. Travelers' argument is oblivious to the fact that Russell did go back and evaluate. He made clear that he is aware of the the evidence that contradicts his conclusion that the fire did not start inside the bedroom, including statements by Sellers and Hayden. This evidence does not alter Russell's opinions. Russell is free to discount that evidence just as Travelers' experts are free to discount the evidence that supports Russell's conclusion.

Travelers also argues that Russell must be disqualified because he cannot test his theory that an unknown electrical appliance caused the fire. The inability to physically test a hypothesis, however, does not render expert testimony inadmissible if the expert tested his or her hypothesis "by systematically eliminating the other possible ignition sources he located in and around the

8

area of origin in accordance with NFPA 921 § 18.2.1." *Kentucky Farm Bureau Mut. Ins. Co.*, 2009 WL 2589854, at *4. Russell concluded that the fire started on the outside patio, and used deductive reasoning to systematically eliminate all possible ignition sources except for the outside receptacle. Therefore, Russell's testimony satisfies Fed. R. Evid. 702 and *Daubert*, and Plaintiff's Motion to exclude his testimony is **DENIED.**

### B. Plaintiff's Experts

Defendant moves to exclude each of Plaintiff's three liability experts for similar reasons. VOA argues that Captain Ward, the Lexington Fire Department Captain who initially investigated the fire, did not conduct a sufficient examination to render an opinion. VOA claims that Travelers' in-house fire investigator James Thomas simply rubberstamped Ward's faulty opinion. Finally, VOA contends that Frederick Franklin was hired just to review the electrical equipment in Sellers's bedroom and cannot render an opinion outside of that scope.

VOA's arguments against Travelers' experts are essentially the same as Travelers' arguments against VOA's expert. The arguments go to the weight of each opinion, but not its admissibility. The witnesses all followed NFPA 921 and their testimony satisfies Fed. R. Evid. 702 and *Daubert*.

#### 1. Captain James Ward

Capt. Ward's investigation relied on sufficient facts, used deductive reasoning and process of elimination to conclude that the fire started next to Sellers's bed. Capt. Ward, as a firefighter, focused his initial investigation on whether the fire was accidental or incendiary. To determine whether the fire was accidental or incendiary, a firefighter must focus on a particular area or point of origin. Once a firefighter determines the fire is accidental, the exact point of origin and ultimate cause of the fire is not as important. Very often, insurance investigators and

people hired by them come in and expand upon the fire department's investigation. The fire department has no interest in allocating fault for civil liability.

Capt. Ward is unquestionably qualified to render opinions based on his training and experience. Capt. Ward conducted a thorough on-site investigation, spoke to numerous witnesses and concluded that the fire started in the trashcan next to Sellers's bed. At oral argument, VOA argued that Capt. Ward should not be permitted to render an opinion as to the cause of the fire because his original report states that the fire "may" have been caused by Sellers's careless disposal of smoking materials. VOA's argument misses the point. Capt. Ward testified that he is 100% certain that the fire was caused by the discarding of cigarettes into the trashcan. Whether at one point in time Capt. Ward's opinion did not met the certainty standards required by NFPA 921 ch. 18.6.2 is simply irrelevant. Capt. Ward's opinion that he will testify to at trial meets NFPA 921's certainty standard. That alleged inconsistency may be material for cross-examination, but it is irrelevant to *Daubert* analysis.

Capt. Ward did not test all the physical evidence recovered at the scene to determine the cause and origin of the fire. However, Capt. Ward preserved evidence for others to review and to avoid spoliation for the insurance investigation. Experts can base opinions on direct and circumstantial evidence. Capt. Ward's opinion is based on elimination of every potential ignition source – except smoking. Travelers' objections about the "allegedly unaccounted for factors go[] to the weight of the testimony, not its admissibility." *Potts*, 2011 WL 4703058, at *4.

### 2. James Thomas

James Thomas is a Travelers employee who investigated the fire. VOA claims that Thomas did not conduct a sufficient examination of the scene and simply rubberstamped Ward's conclusions.

10

Thomas's opinion is admissible because it is based on sufficient facts and derived from the principles and methods of NFPA 921. After inspecting the building's exterior and the interior of different apartments, Thomas narrowed the area of the fire origin to Apartment 51. Thomas inspected Apartment 51's patio and collected debris samples for laboratory analysis to detect ignitable liquids. Thomas's report and testimony details the evidence he relied upon before coming to his conclusion. To briefly summarize, after concluding that the fire started in Sellers's bedroom, Thomas examined the burn patterns on the furniture in the bedroom and the electrical artifacts and wiring in the room and determined that the fire originated along the "C" wall. Thomas spoke to Capt. Ward, obtained his report and then spoke to Dena Sellers. Sellers said that she did not remember if she smoked in bed that night or if she dumped the ashtray before falling asleep. Based on his observations of the scene, Capt. Ward's report and Sellers's testimony, Thomas concluded that discarded smoking materials in the trash can next to Sellers's bed caused the fire.

VOA argues that Thomas did not conduct a sufficient investigation and then simply adopted Ward's opinion. Even if that sequence of events were true, it would not be enough to disqualify Thomas's expert opinion. An expert is free to rely on another expert's opinion in formulating their own opinion. Regardless, Thomas conducted a thorough onsite investigation and personally interviewed Sellers. Thomas is qualified by experience, training and education to render an opinion as to fire cause and origin. He conducted a sufficient examination of the scene and the other available evidence before arriving at a conclusion by following NFPA 921's method.

VOA also argues that Thomas should be precluded from giving expert testimony because he is employed by Travelers and is therefore inherently biased. VOA is free to explore this

potential bias on cross-examination but Thomas's expert testimony is admissible because he used deductive reasoning in accordance with his experience and the NFPA 921. VOA's objections to Thomas's testimony are more properly presented on cross-examination as they attack the weight of his testimony, not its admissibility.

### 3    Frederick "Rick" Franklin

VOA argues that Franklin is not qualified as a fire cause and origin expert because his background is in engineering and he was not initially retained as a fire cause and origin expert. Franklin is, without question, an expert qualified by his knowledge, skill, experience, training, and education. One does not have to be a Certified Fire Investigator or a Certified Fire and Explosives Investigator to be qualified as an expert to render an opinion as to a fire's cause and origin.

According to VOA, Franklin should be disqualified because he performed "limited site inspection" and was originally retained for the limited purpose of examining the electoral outlets inside Sellers's bedroom. If conducting a limited site inspection is a basis to disqualify an expert, then VOA's expert must also be disqualified. This is simply not the case. Next, the scope of Franklin's initial assignment has no bearing on his ability to testify as an expert.

What is relevant is that Franklin used reliable principles and methods to form his opinion and applied those principles and methods fairly to the facts of this case. Franklin collected and analyzed the available data—field and laboratory examinations, eyewitness accounts, depositions and the data collected by Captain Ward and James Thomas. Using deductive reasoning, Franklin determined that the fire was caused by careless smoking.

### III.  CONCLUSION

The parties make the same arguments and defenses against each other. For example, VOA argues that Franklin's opinion is unreliable because he "did not conduct witness interviews or speak with any LFD firefighters." [DE 66-1 at 19]. Travelers responds that Franklin "follow[ed] an accepted fire investigation methodology" and "collected and analyzed the available data including his field and laboratory examinations, reviewed eye witness accounts, read depositions and considered data collected by Captain Ward and James Thomas." [DE 72]. Travelers similarly argues that VOA's expert opinion is unreliable because he did not personally examine the fire scene or interview any witnesses, including Sellers and the firefighters. [DE 57-1 at 10-11]. VOA responds that Russell "property explained why he relied on certain testimony and physical evidence in rendering his opinion." [DE 71 at 11]. The inconsistency of the parties' arguments reflects the fact that all four experts are qualified to give expert opinion and used reliable methods to arrive at their opinion.

Accordingly, it is **ORDERED** that:

1) Plaintiff's Motion to exclude Russell's testimony [DE 57] is **DENIED;** and

2) Defendant's Motion to exclude Plaintiff's liability experts [DE 66] is **DENIED**.

Dated this 21st day of August, 2012.



Signed By:
*Karen K. Caldwell*
United States District Judge